*E-FILED 4/10/06*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENIZ BOBOL, et al., | NO. C 04 00082 JW (RS) |
| Plaintiffs, | **ORDER GRANTING MOTION FOR ATTORNEY FEES** |
| v. | |
| HP PAVILION MANAGEMENT, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Aaron Lodge and Tracey DeMartini entered into a settlement agreement with defendant San Jose Arena Management Company, LLC (sued as HP Pavilion Management, hereinafter "HP Pavilion") prior to trial. A third plaintiff, Alfredo Kuba, was party to the settlement agreement, but attempted to withdraw from it shortly after it was executed. Although Kuba eventually dismissed his claims prior to trial, he is not a party to this motion. The remaining two plaintiffs proceeded to trial, where they obtained a jury verdict against HP Pavilion; they also are not parties to this motion.

Lodge and DeMartini now seek an award of attorney fees for the work performed on their behalf by their counsel, J. Kirk Boyd, and his associates. HP Pavilion does not dispute that Lodge and DeMartini are prevailing parties who ordinarily would be entitled to recover attorney fees in this action under 42 U.S.C. § 1988, but it contends that any fee award should be substantially less than

1  the amount requested, based both on objections to various aspects of the particular bills for legal
2  services submitted in support of the motion, and more generally on the argument that only a small
3  award, if any, is appropriate here.

4  Having reviewed the record and the briefing of the parties, and oral argument having been
5  held, the Court will grant the motion for attorney fees in the amount of $165,765.63, together with
6  uncontested costs in the amount of $150.

## II.  BACKGROUND

8  Lodge and DeMartini are among a group of five plaintiffs, all initially represented by Boyd,
9  who object to the practices of the Ringling Brothers, Barnum & Bailey Circus with respect to how
10 the circus treats animals used in its performances.  This action arose out of plaintiffs' protests of
11 those practices on HP Pavilion property in conjunction with the appearance of the circus, and the
12 defendants' reactions to those protests.[1]

13 Early in this litigation, plaintiffs were successful in obtaining a preliminary injunction
14 guaranteeing them the right to protest on HP Pavilion property, with certain limitations.  Plaintiffs
15 and HP Pavilion thereafter entered into settlement negotiations.  The various plaintiffs did not all
16 have the same views as to settlement; as noted above, two of the five did not enter into the
17 settlement agreement, and plaintiff Kuba attempted to withdraw from it.

18 Under the settlement agreement, HP Pavilion agreed to adopt a "free speech protocol" that
19 gives members of the public roughly the same rights to protest on HP Pavilion property that had
20 been required by the terms of the preliminary injunction.  Lodge and DeMartini also received
21 relatively small monetary damages, although greater than the amount awarded by the jury to the
22 plaintiffs who proceeded to trial.

---

[1] Plaintiffs initially named the City of San Jose and the circus corporation as additional defendants in this action, based on allegations that City and circus employees acted in concert with HP Pavilion to impair plaintiffs' rights. The circus corporation's motion to dismiss was granted and Lodge and DeMartini voluntarily dismissed their claims against the City after settling with HP Pavilion.

2

III. DISCUSSION

A. Legal Framework

The parties are in agreement, and the law is well-established, that the starting point for determining the amount of an attorney fee award of this type is to calculate the "lodestar." See *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ("'The lodestar determination has emerged as the predominate element of the analysis' in determining a reasonable attorney's fee award. [citation]. The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.")

"There is a strong presumption that the lodestar figure represents a reasonable fee." *Morales*, 96 F.3d at 363 n.8. Nevertheless, upon calculating an appropriate lodestar, the court must still consider whether other factors warrant an adjustment of the award, either upward or downward. *Morales*, 96 F.3d at 363-364.[2]

Here, Lodge and DeMartini have requested fees in a lodestar amount of $206,441 (after making certain additional reductions on reply). Lodge and DeMartini expressly disclaim any entitlement to have a "multiplier" or other upward adjustment applied to the lodestar. HP Pavilion, in turn, mounts a two pronged attack on the fee request. First, HP Pavilion offers the declaration of James P. Schratz, of Schratz and Associates, "a firm that conducts legal [fee] audits of various law

---

[2] Historically, courts identified twelve factors bearing on the reasonableness of a fee request: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. See, e.g., *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). As the Supreme Court noted in *Hensley*, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9. It is not incumbent on the court to address the factors expressly, but it must take into account those factors not already subsumed in the lodestar. *Morales* 96 F.3d at 364 n.10.

3

1 firms throughout the country." After establishing his credentials and explaining his methodology,
2 Schratz describes various items in plaintiffs' legal bills that he believes are not warranted or not
3 properly chargeable to HP Pavilion. Schratz concludes with the opinion that the original lodestar
4 claimed by Lodge and DeMartini should be reduced by "at least $128,716.30." This would result in
5 a lodestar of $104,533.70. HP Pavilion then goes on to argue that Lodge and DeMartini should
6 recover substantially less than Schratz's proposed lodestar, if anything, in light of other
7 considerations discussed below.

B. Lodestar Calculation

1. *Hourly Rates*

Lodge and DeMartini seek to recover attorney fees at an hourly rate of $400 for Boyd, $250 for his senior associate and $150 for his junior associate. Schratz opines that these rates are unreasonably high, based primarily on evidence that average billing rates of attorneys in small firms tend to be lower than those of attorneys practicing in large firms. Schratz's evidence has some probative value and persuasive effect, but it falls short of establishing that his recommended hourly rates are appropriate here. In particular, by looking only at average rates among small firms as a whole, Schratz's analysis fails to account for relevant factors such as the skill and reputation of the attorney and the nature of the legal work at issue. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) ("The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively--even within a law firm.) Small law firms in this geographic area provide a wide variety of legal services, only a small percentage of which involves federal civil rights and free speech litigation. It is not reasonable to presume that taking a mathematical average of small firm billing rates necessarily reflects a "reasonable" rate for the particular work and counsel involved here. Rather, a reasonable inference is that the averages presented by Schratz include a significant component of legal services of a relatively unsophisticated nature, for which less may be reasonably charged.

Conversely, however, it would not be reasonable to depart too far from broad market averages without a sufficient showing that the particular nature of the litigation and or counsel's

4

qualifications and reputation support an unusually high hourly rate. Here, the record demonstrates that Boyd is well-versed in this type of litigation and has made it a particular speciality over the course of his career, a fact reflected in his performance and the results achieved in this action. Lodge and DeMartini submitted a declaration evidencing that Boyd's time has been billed and actually paid at the rate of $325 per hour in a case where the client was a governmental entity receiving a "reduced rate," and that his time has been billed, and assertedly collected at the rate of $450 per hour in at least some other cases. These factors justify a rate substantially higher than that suggested by Schratz.[3] Under all of the circumstances present in this record an hourly rate for Boyd of $350 is reasonable, and the rates claimed for his associates require no adjustment.[4]

2. *Specific Entries in Dispute*

In his analysis of the fee claim, Schratz has proposed specific dollar reductions to adjust for time entries that he believes were either excessive or not properly chargeable to HP Pavilion. Schratz typically calculated those proposed reductions by taking a certain percentage off the total dollar amount involved, *after* he had already applied his proposed discounted hourly rates. On reply, in several instances Lodge and DeMartini stipulated that the dollar amounts of reductions proposed by Schratz would be appropriate, or in some cases that a smaller reduction would be acceptable. As set forth below, the Court agrees with most of the dollar reductions proposed by Schratz or accepted by Lodge and DeMartini.. The Court recognizes that applying reductions in those specific amounts will represent a lower *percentage* of hours being disallowed than was proposed by Schratz, given that the Court has approved higher hourly rates. However, in each instance, the Court has

---

[3] As Lodge and DeMartini point out, case law recognizes that it may also be reasonable for attorneys in cases such as these to receive an increased hourly rate to compensate for the delay in payment that they face. See *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989) ("an appropriate adjustment for delay in payment-- whether by the application of current rather than historic hourly rates or otherwise--is within the contemplation of the statute.")

[4] Schratz recommends only relatively small downward adjustments in the associates' billing rates. In its opposition brief, HP Pavilion argues that Lodge and DeMartini submitted insufficient evidence regarding the associates' qualifications to permit review of the reasonableness of their rates, such that recovery for their time should be disallowed entirely. While further information would have been helpful, the record is sufficient to conclude that the rates claimed for all additional timekeepers are reasonable under all the circumstances, including the nature of the case, prevailing general market rates, and the quality of the representation.

5

considered the basis of the objection raised by Schratz and believes that reductions in the specific dollar amounts will adequately ensure that the lodestar reflects a reasonable fee for compensable services.

a) Schratz proposes eliminating from the lodestar 75% of time incurred between February 17, 2004 and April 12, 2004, when the primary focus of Boyd's work was opposing a motion to dismiss brought by the circus corporation. Lodge and DeMartini expressly concede that the circus was successful in obtaining a dismissal and impliedly concede that work related only to litigation against the circus should not be compensated in this motion. Lodge and DeMartini argue, however, that the time in dispute should not be disallowed because "much of the work" related to the issue of whether vehicles with messages on them would be permitted in the HP Pavilion parking lot--a concession Lodge and DeMartini successfully obtained in the settlement agreement. Although it appears there may have been some overlap in legal issues, DeMartini and Lodge have not shown that all of the time incurred in unsuccessful litigation against the circus is equally attributable to their successful efforts against HP Pavilion. Schratz's proposed deduction of $11,908.12 will result in reasonable lodestar figure for this part of the litigation. (As noted above, using this figure results in allowing a higher percentage of the hours claimed than Schratz proposed allowing).

b) Schratz proposes disallowing 75% of the time incurred on January 13, 15, and 16, 2005, on the grounds that the focus of that work was opposing a motion for judgment on the pleadings brought by the City of San Jose. In response, Lodge and DeMartini agree to the dollar amount proposed by Schratz of $4125. A reduction in that amount is appropriate and will result in a reasonable lodestar. Lodge and DeMartini have also stipulated to a 7% reduction in the total hours claimed "across the board" as a means of ensuring that time incurred in litigating against the City is not part of the claim, which also is appropriate.

c) The parties dispute the reasonableness of the total time spent preparing the motion for preliminary injunction. Schratz identifies a total of 191 hours spent on the project, and proposes cutting that in half. Lodge and DeMartini do not dispute the accuracy of that total, but argue it was reasonable given the central and pivotal role of the brief, and the complexity of the legal issues.

6

1 Schratz's proposal to reduce the time of all timekeepers by 50% is too drastic, given that the
2 preliminary injunction briefing necessarily encapsulated the case and the issues, and given that
3 plaintiffs' success in obtaining the preliminary injunction laid the foundation for the settlement they
4 later obtained. Schratz's proposal for a blanket reduction also fails to give due consideration to how
5 excess time was incurred. The 9.25 hours and 35.25 hours billed by Boyd and his senior associate on
6 the project were entirely reasonable. However, *two* lower level timekeepers *each* billed over 70
7 hours to the project (both were law clerks, billing at $100 per hour). While it is reasonable to assign
8 lower level personnel to perform basic research and initial drafting, and while the inefficiencies of
9 inexperience are offset to some degree by correspondingly lower billing rates, incurring over 140
10 hours of lower level (but still costly) time on this project did not result in a reasonable fee that HP
11 Pavilion should be asked to bear. Accordingly, a reduction of $7000 (70 hours x $100/hr) for this
12 item is appropriate.

13 Schratz also proposes a 50% reduction in the time spent on the reply brief, arguing it was
14 only five pages long. Although the reply brief was short, the 11.75 hours Boyd incurred in preparing
15 it is within the range of what is reasonable, and Schratz's proposed reduction thereto is not
16 warranted.[5]

17 d) Schratz asserts that the billing includes 13 hours that in his judgment should be
18 considered non-compensable clerical work. Lodge and DeMartini responds that counsel attempted
19 to exercise good billing judgment and not to include inappropriate matters, but that they would
20 stipulate to a reduction of $1233.75 to address this issue.[6] The record does not reflect billing
21 practices warranting a greater reduction on this point.

22 e) Schratz recommends disallowing all time spent preparing an amended complaint

---

[5] Length of a brief is not a reliable indicator of how much time reasonably was incurred in preparing it. A quotation variously attributed to Pascal, Mark Twain, and Samuel Johnson, among others, states, "I'm sorry this letter is so long, but I did not have time to make it shorter."

[6] Lodge and DeMartini characterize that reduction as being one-half of Schratz's proposal. Once again, because Schratz's calculations include his proposed reduction in hourly rates, the reduction being applied is not equivalent to simply cutting the hours by 50%. The result, however, is consistent with the mission to identify a reasonable lodestar.

7

1 that was ultimately not filed.  Lodge and DeMartini correctly note that the fact the complaint was not
2 filed does not automatically render the time non-compensable, but they stipulate to a reduction in the
3 dollar amount proposed by Schratz of $2467.50.  A reduction in that amount results in a reasonable
4 lodestar.

5       f)  Schratz recommends deductions totaling  $3062.50 for work done in connection
6 with certain interrogatories, on the grounds that the work related to claims against the City or was
7 otherwise excessive.  Lodge and DeMartini stipulate to a reduction in the amount of $1000, which is
8 appropriate.[7]

      3. *Quarter-Hour Incremental Billing*

10 Boyd and his associates recorded their time in quarter-hour increments.  Schratz declares that
11 the "standard minimum billing unit in current law practice is 0.1 hour."  Whether or not billing in
12 tenths is "standard," it indisputably is a very common practice and has much to recommend it.
13 Schratz endorses the conclusion of a California State Bar Mandatory Fee Arbitration Advisory, No.
14 03-01, that "[i]f a higher minimum is used, such as .25 or .5, this probably increases the time by 15%
15 to 25%."  Schratz therefore proposes reducing the fee claim by 20% (after other deductions).

16 The assumption underlying criticism of billing in quarter-hour increments is that human
17 nature will lead to a greater number of instances where time is rounded up to the nearest quarter hour
18 than can be offset by the instances where time is rounded down.  Although the validity of that
19 assumption appears intuitive, it does not lead to the conclusion that quarter-hour billing *necessarily*
20 leads to unreasonable billing totals.  For example, Boyd expressly declares that his practice is simply
21 not to bill at all for short tasks that would not warrant a quarter-hour entry; under a tenth-based
22 system, entries for such items would likely increase the total bill.[8]

---

[7] The deductions stipulated to by Lodge and DeMartini total $8826.25  (See Supplemental Boyd Declaration, paras. 24, 30, 31, 32, and 33.)  Lodge and DeMartini, however, assert that the total of the stipulated deductions is only $6358.75.  (Supplemental Boyd Declaration para. 34). Even assuming Lodge and DeMartini did not intend to stipulate to deductions totaling $8826.25, it would not alter the conclusion that the lodestar calculated herein represents a reasonable fee.

[8] Lodge and DeMartini make the additional argument that there are only 11 instances of 0.25 hours entries.  This argument misses the point that billing in quarter hour increments theoretically may lead to excessive upward rounding on *any* entry, not just 0.25 entries.

*United States District Court*
For the Northern District of California

Applying any particular reduction to the bill under the circumstances of this case to compensate for rounding that may or may not have had a net upward effect would be unduly speculative and arbitrary.[9] This record reflects a fee claim made in good faith in which Boyd undertook a detailed review of the contemporaneous time records to excise time that was, in his judgment, excessive or otherwise inappropriate to request. The Court's review likewise has been directed to ensuring that the total hours claimed are reasonable and relate only to compensable matters. As the total hours allowed under this order are reasonable, there is no cause to assume that the quarter hour billing increments resulted in a net increase to a degree that would warrant further adjustment.

4. *Resulting Lodestar*

Taking into account the deductions from actual time entries offered by Lodge and DeMartini in their original motion or to which they stipulated on reply, and applying the hourly rates discussed above, generates the following results:

Kirk Boyd: 316 hours @ $350/hr. = $110,600

C. Garcia:   206 hours @ $250/hr = $51,500

E. Brown:   88 hours @ $150/hr   = $13,200

Law Clerks: 157 hours @ $100/hr. = $15,700

 TOTAL = $ 191,000

Applying the further deductions discussed above results in the following calculation:

$191,000.00

($11,908.12) -- paragraph a above

($4125.00) -- paragraph b above

($7000.00) -- paragraph c above

($1233.75) -- paragraph d above

---

[9] Schratz, for example, appears to have proposed a 20% reduction as representing the mid-point in the State Bar's estimate that billing in increments greater than tenths of an hour "*probably* increases the time by 15% to 25%." Not only is that arbitrary and speculative, it fails to take into account the fact that the State Bar's estimated range applies to billing in increments "such as .25 *or* .5."

                  ($2467.50) -- paragraph e above

                  ($1000.00) -- paragraph f above

           TOTAL = $163,265.63

Finally, an additional $2500 represents a reasonable fee for additional work incurred connection with the fee motion subsequent to the time it was originally filed. Accordingly the total lodestar amount is **$165,765.63.**

    C.  <u>No Departures from the Lodestar Are Warranted</u>

HP Pavilion offers four basic reasons to justify a departure from the presumption that the lodestar represents a reasonable fee.

              1. *Plaintiff Kuba's Attempt to Renounce the Settlement*

HP Pavilion contends that the fee claim should be denied entirely, or the award reduced, in light of the fact that it was forced to continue litigating against plaintiff Kuba even though he had been party to the settlement agreement. This motion, however, seeks no recovery for work performed by Boyd and his associates on behalf of Kuba..[10] The adjustments made to the billing were undertaken to eliminate any time incurred attributable to Kuba (and the non-settling plaintiffs), including any extra time that resulted from the difficulties inherent in representing multiple plaintiffs who diverge as to how the case should proceed.

HP Pavilion's argument distills to a complaint that it did not receive the full benefits of the settlement for which it bargained. The relevant issue, however, is *not* what HP Pavilion received or failed to receive as benefits of the settlement, but what Lodge and DeMartini received. Kuba's apparent recalcitrance may have increased the burden to HP Pavilion, but it has no bearing on the critical points that Lodge and DeMartini obtained a favorable settlement in this action that made them prevailing parties, and that the lodestar calculated above represents a reasonable fee for the work necessary to obtain that settlement. That Kuba's subsequent conduct may have made the

---

[10] To be sure, much of the work was done for the benefit of all five original plaintiffs. However, it is not the case, and HP Pavilion does not suggest otherwise, that Lodge and DeMartini would be barred from recovering for work that would have been done had they always been the only two plaintiffs just because there were other plaintiffs in the picture at the time.

10

settlement a "bad deal" from HP Pavilion's point of view is not a reason to reduce Lodge and DeMartini's attorney fee recovery.

### 2. *Boyd's Conduct During Settlement*

HP Pavilion argues that the award should be reduced or eliminated because Boyd allegedly impeded the settlement process by making what HP Pavilion contends were unreasonable demands for attorney fees. The record does not demonstrate that Lodge and DeMartini incurred otherwise unnecessary fees as the result of any unreasonable or improper conduct by Boyd. Although the parties were unable to reach a settlement that included an agreement as to the amount of fees, a settlement was reached that left the issue be decided by the court. The parties' mutual agreement to resort to that process did not substantially increase the fees incurred prior to settlement, and there is no basis to penalize Lodge and DeMartini (or Boyd) simply because there was no agreement on the amount of fees. Had there been no settlement at all, and Lodge and DeMartini had prevailed at trial (as did the non-settling defendants), the fee issue would have been decided by motion in any event, by which time substantially *more* fees might have been incurred.

### 3. *"Grossly Excessive" Fee Request*

HP Pavilion suggests that the fee award be denied entirely, or reduced substantially, as a penalty designed to discourage overreaching. Even assuming that imposing a penalty might be appropriate in some cases where a party makes "grossly excessive" fee requests, this is not such a case.

### 4. *Degree of Success and Amount of Recovery*

Relying on *Farrar v. Hobby,* 506 U.S. 103 (1992) and similar cases, HP Pavilion argues that the fee award should be reduced in light of what Lodge and DeMartini actually obtained in this litigation. HP Pavilion may be correct that the monetary element of Lodge and DeMartini's recovery was not especially large. HP Pavilion certainly is correct that *Farrar* and other cases teach that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114 (citing *Hensley*, *supra*, 461 U.S., at 436). However, nothing in *Farrar* or cases following it establishes the kind of *per se* rule that HP Pavilion appears to

be advocating that an attorney fee award must always be limited by some mathematical ratio to the amount of the monetary award. Rather, it remains the law that:

> Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley*, 461 U.S. at 435 n. 11.

In *Farrar*, the plaintiff had obtained *only* nominal damages and what was in effect a declaration that his rights had been violated *in the past*; plaintiff had abandoned his request for injunctive relief. 461 U.S. at 406. Thus, although the *Farrar* plaintiff technically was a "prevailing party," the judgment he obtained gave him almost *none* of what he had sought.

Here, in contrast, a primary component of what Lodge and DeMartini sought from the outset of the litigation was the right to protest on HP Pavilion property, including such details as parking cars bearing messages in the HP Pavilion lot, not being confined to "free speech pens," and the like. The settlement agreement achieved virtually all those goals. Lodge and DeMartini may have received monetary compensation that was fairly small in absolute terms or in comparison to some of their demands, but monetary compensation had never been their sole focus as it was for the *Farrar* plaintiff. Because the non-monetary relief alone justifies the attorney time expended, no departure form the lodestar is warranted.

HP also presents a related argument that the settlement agreement gave Lodge and DeMartini little more than they had already obtained in the preliminary injunction. HP Pavilion appears to suggest that as a result, either the award should be reduced to eliminate most or all of the time incurred after the preliminary injunction, or that the "degree of success" should be analyzed with greater attention to demands for additional relief that Lodge and DeMartini made during settlement but which they did not obtain. As to the first point, a preliminary injunction is just that: preliminary. The additional time incurred in reducing that preliminary victory into a permanently enforceable contractual and legal right was reasonable and justified. As to the second point, HP Pavilion has not shown that Lodge and DeMartini's unmet settlement demands were such that it could fairly be said

that their overall degree of success in this litigation was so limited as to mandate a departure from the lodestar. Whatever additional relief Lodge and DeMartini may have hoped for (or, perhaps, demanded as a negotiating strategy) does not change the fact that they obtained sufficient meaningful relief in this action to justify the attorney time expended.[11]

## IV. CONCLUSION

Lodge and DeMartini's motion for an award of attorney fees and costs is GRANTED in the amount of $165,765.63 in fees and $150 in costs.

IT IS SO ORDERED.

Dated: 4/10/06

_____
RICHARD SEEBORG
United States Magistrate Judge

---

[11] HP also argues, almost in passing, that a fee award would be inappropriate here because the preliminary injunction was decided pursuant to state law to which 42 U.S.C. § 1988 would not apply. While a reasonable inference is that the settlement agreement was motivated in large part by the issuance of the preliminary injunction, the agreement did not treat the state and federal law claims separately. Accordingly, for purposes of the application of section 1988, Lodge and DeMartini are prevailing parties as a result of the settlement agreement on both their state and federal claims in that they obtained, at least in part, the relief they had sought under both state and federal law.

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Lizbeth Brown     lizbethbrown@aol.com,

Shannon N. Cogan     shannon.cogan@berliner.com, rr@berliner.com

Michael J. Dodson     cao.main@sanjoseca.gov

Marwa Elzankaly     melzankaly@mfmlaw.com, smaes@mfmlaw.com

Nora Valerie Frimann     cao.main@sanjoseca.gov, Brande.Gex@sanjoseca.gov

Christine L. Garcia     christine@animalattorney.com

Matt Gonzalez     mgonzalez@gonzalezleigh.com, linglis@gonzalezleigh.com

Rita A. Hao     rhao@gonzalezleigh.com, linglis@gonzalezleigh.com

G. Whitney Leigh     wleigh@gonzalezleigh.com, malberto@gonzalezleigh.com; linglis@gonzalezleigh.com; bld@kvn.com

James McManis     jmcmanis@mfmlaw.com, clarsen@mfmlaw.com; smaes@mfmlaw.com

Thomas P. Murphy     tpm@berliner.com

Nima Nami     nimanami@hotmail.com, malberto@gonzalezleigh.com

Juan Enrique Pearce     epearce@gonzalezleigh.com, malberto@gonzalezleigh.com

David Michael Rollo     david.rollo@cco.sccgov.org, anna.espiritu@cco.sccgov.org

Jessica Valenzuela Santamaria     jvalenzuelasantamaria@cooley.com

Shannon Kathleen Smyth-Mendoza     cao.main@ci.sj.ca.us, glenda.lucas@sanjoseca.gov

Rosa Tsongtaatarii , Esq     Rosa.tsongtaatarii@ci.sj.ca.us,

Frank R. Ubhaus     fru@berliner.com, cep@berliner.com

Bryan W Vereschagin     bvereschagin@gonzalezleigh.com, linglis@gonzalezleigh.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 4/10/06**                                             **Chambers of Judge Richard Seeborg**

                                                               **By:        /s/ BAK**